**Lemuel Lester WEITZEL, Appellant,**

v.

**BROWN–NEIL CORPORATION, a corporation, Appellee.**

**No. 7511.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 15, 1957.

Decided Jan. 14, 1958.

Mary Frances Brown, Clarksburg, W. Va. (W. G. Stathers, and Stathers & Cantrall, Clarksburg, W. Va., on brief), for appellant.

Oscar J. Andre, Clarksburg, W. Va. (Willis O. Shay and Steptoe & Johnson, Clarksburg, W. Va., on brief), for appellee.

Before SOBELOFF and HAYNSWORTH, Circuit Judges, and THOMSEN, District Judge.

THOMSEN, District Judge.

This is an appeal from a judgment for defendant (Brown-Neil) in an action to recover commissions on two contracts awarded to it for the fabrication and installation of certain structures for

the Atomic Energy Commission. Plaintiff (Weitzel) bases his claim on an implied contract. Brown-Neil denies the existence of any contract, express or implied, between it and Weitzel, and contends that if such a contract did exist it would be unenforceable in view of the covenant against contingent commissions contained in the AEC contracts pursuant to 41 U.S.C.A. § 254.[1]

Although the testimony on many points is conflicting and there is sharp dispute with respect to the inferences to be drawn from the underlying facts, we accept the findings of fact contained in the opinion of the district judge, 152 F.Supp. 540, 541–545. Rule 52(a), F.R.Civ.Proc., 28 U.S.C.A. After stating the facts in detail, the district judge concluded: "Taking into consideration all the evidence, I find that defendant did not accept plaintiff's services under such circumstances as to give rise to an implied obligation to pay therefor."

Brown-Neil is a West Virginia corporation, which was organized in 1951 for the purpose of pooling the resources of its four corporate stockholders in procuring and performing large contracts. Hinkle Brothers, Inc. (Hinkle), one of the four stockholders, had for some time employed Weitzel as a manufacturer's representative on a commission basis. After this action was filed but before it was heard, Hinkle purchased all of the stock of Brown-Neil, took over all of its assets, and assumed all of its liabilities.

■ When the bids for the AEC contracts were being prepared it was contemplated that if Brown-Neil were the successful bidder it would merely supervise the administration of the contracts; most of the actual work would be performed and the purchase of materials would be made by the four owner companies. The only allowance for Brown-Neil itself included in the bid was about $50,000 to cover the cost of supervision, engineering, insurance, office personnel, legal and auditing expenses, and other overhead. Nothing was included for any profit to Brown-Neil, nor for any commission or other compensation to Weitzel; the anticipated profits were to go to Hinkle and the other corporations which constituted Brown-Neil and which were to divide the bulk of the work among them. It was always contemplated that Hinkle would do a large part of the work as a subcontractor; it finally received $547,430.68 for such work out of the $1,834,820.66 received by Brown-Neil. We are convinced that Weitzel's services in calling the job to the attention of Hinkle, procuring the plans and specifications, attending various meetings, and the like, were rendered under circumstances which show that Weitzel is not entitled to commissions from Brown-Neil, but is entitled to commissions from Hinkle, at such rate or rates as may be found appropriate in the light of his contract and the prior transactions between the parties, based upon the amount Hinkle received under its subcontract. Indeed, at one time Hinkle tendered Weitzel a check for $3,000 as part payment on account of such liability. Weitzel did not accept the check because of the pending action against Brown-Neil, and perhaps also because the amount of the compensation was not fixed, but that is no bar to his pressing a claim against Hinkle at this time.

■ Nor would such a claim be barred by any statute or consideration of public policy under the evidence in this case, although we agree with the district judge that the covenant against contingent fees or commissions, which was a part of both AEC contracts, is fatal to Weitzel's claim against Brown-Neil. Collector of Internal Revenue v. Hubbard, 12 Wall. 1, 12, 79 U.S. 1, 12, 20 L.Ed. 272; Mitchell v. Flintkote Co., 2 Cir., 185 F.2d 1008, certiorari denied 341 U.S. 931, 71 S.Ct. 804, 95 L.Ed. 1361. Cf. Eastern Woodworks v. Vance, 206 Md. 419, 112 A.2d 231, where the claim

---

1. One of the contracts was with the AEC and one with a prime contractor for the AEC, but both contained the covenant called for by 41 U.S.C.A. § 254, and will be referred to herein as the AEC contracts.

was against a subcontractor. Weitzel was a bona fide employee or bona fide established selling agency maintained by Hinkle for the purpose of securing business, within the exception provided for in 41 U.S.C.A. § 254, but he was not such an employee or agency maintained by Brown-Neil. United States v. Paddock, 5 Cir., 178 F.2d 394, 395–396; 5 Cir., 180 F.2d 121, 122, certiorari denied 340 U.S. 813, 71 S.Ct. 41, 95 L.Ed. 597; Le John Mfg. Co. v. Webb, 95 U.S.App. D.C. 358, 222 F.2d 48, 50. Weitzel relies upon a GSA regulation, 17 F.R. 11871, Dec. 31, 1952, 44 C.F.R. 150.1–150.13, but he is unable to show the continuity of relationship with Brown-Neil required by § 150.5(e) (2) (iii).

The judgment of the district court must be affirmed, but without prejudice to Weitzel's claim against Hinkle Brothers, Inc.

Affirmed.